**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000894
31-DEC-2019
07:56 AM**

NO. CAAP-18-0000894

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
KEONI JAENTSCH, also known as Keone Jaentsch,
Defendant-Appellant

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(1FC161000066 (FC-CR 16-1-0066))

SUMMARY DISPOSITION ORDER
(By: Ginoza, C.J., and Chan and Wadsworth, JJ.)

A jury convicted Defendant-Appellant Keoni Jaentsch, also known as Keone Jaentsch (**Jaentsch**), of abusing his now ex-wife Pattie-Ann Puha (**Puha**) in the presence of his ten-year-old stepson (**Stepson**). He was sentenced to five years of incarceration.

Jaentsch appeals from the Judgment of Conviction and Sentence (**Judgment**) and the Mittimus, both filed on October 16, 2018, in the Family Court of the First Circuit.[1/] Jaentsch contends that: (1) he received ineffective assistance of trial counsel (**defense counsel**); (2) the Circuit Court erred in finding that Stepson was qualified to testify as a witness; and (3) there was insufficient evidence to support his conviction.

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we affirm the Judgment for the reasons set forth below.

---

[1/] The Honorable Rom A. Trader presided.

## I.   BACKGROUND

On November 9, 2016, Jaentsch was charged with two counts of Abuse of Family or Household Members in violation of Hawaii Revised Statutes (**HRS**) § 709-906(1) and (9) (**Count 1**) and HRS § 709-906(1) and (5)(a) (**Count 2**).[2/]  In sum, the State alleged that on October 30, 2016, Jaentsch intentionally, knowingly or recklessly physically abused Puha in the presence of Stepson, a family or household member under 14 years of age.

On March 21, 2017, the State's Motion to Determine Voluntariness of Statements Defendant Made to the Police (**Motion**) was filed.  The Motion asked the Circuit Court to determine the voluntariness of statements made by Jaentsch to a Honolulu Police Department (**HPD**) detective (**Detective**) on November 1, 2016 during the course of HPD's investigation.  The Circuit Court heard the Motion prior to jury selection and trial on November 13, 2017. At the hearing, defense counsel appears to have consulted with

---

[2/]     HRS § 709-906 (2014 & Supp. 2018) provides, in relevant part:

> Abuse of family or household members; penalty.  (1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member . . . .
>
> For the purposes of this section:
>
> .  .  .  .
>
> "Family or household member":
>
> (a)    Means spouses or reciprocal beneficiaries, former spouses or reciprocal beneficiaries, persons in a dating relationship as defined under section 586-1, persons who have a child in common, parents, children, persons related by consanguinity, and persons jointly residing or formerly residing in the same dwelling unit[.]
>
> .  .  .  .
>
> (5)    Abuse of a family or household member . . . [is a] misdemeanor[] and the person shall be sentenced as follows:
>
> (a)    For the first offense the person shall serve a minimum jail sentence of forty-eight hours[.]
>
> .  .  .  .
>
> (9)    Where physical abuse occurs in the presence of a minor, as defined in section 706-606.4, and the minor is a family or household member less than fourteen years of age, abuse of a family or household member is a class C felony.

2

Jaentsch and then told the Circuit Court that Jaentsch "does not deny that he made these statements voluntarily." The Circuit Court granted the Motion, subject to an exception that is not at issue on appeal, and expressly found that "[Jaentsch's] statement was voluntarily made[.]" During cross-examination of Jaentsch at trial, the State raised certain inconsistencies between his trial testimony and the statements he had made to the HPD Detective.

The jury found Jaentsch guilty on Count 1 and not guilty on Count 2. He was sentenced to five years of incarceration, to run concurrently with any other sentence, with credit for time served.

Jaentsch now appeals from the Judgment.

## II.  DISCUSSION

### A.    Jaentsch Has Not Shown Ineffective Assistance of Counsel

Jaentsch argues that defense counsel provided ineffective assistance by failing to contest the Motion and by stipulating to the voluntariness of the statements Jaentsch made to the HPD Detective.[3] He contends that counsel should have contested the Motion, because Jaentsch later testified that his statements were the product of coercion, exerted when HPD

---

[3]    As part of his ineffective assistance argument, Jaentsch contends that the stipulation "[was] problematic in the first instance because the court never confirmed that he agreed with the stipulation via an on-the-record colloquy[,]" and the court "should have engaged Jaentsch to confirm that he was intelligently, knowingly and voluntarily relinquishing his fundamental constitutional rights to due process and confrontation." To the extent Jaentsch seeks to hold defense counsel responsible for this alleged failure of the Circuit Court, his argument is without merit. See Grindling v. State, 144 Hawai'i 444, 452, 445 P.3d 25, 33 (2019) (defendant was not deprived of effective assistance by counsel's failure to request on-the-record colloquy by the trial court before it accepted a stipulation to certain elements of the charged offense).

Jaentsch does not separately argue that the Circuit Court erred by not conducting a colloquy (i.e., separately from his ineffective assistance argument), and he has not included this issue in his statement of points of error in the opening brief, as required by Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4). The omission of this issue therefore appears to be deliberate. We also note that, here, unlike in State v. Murray, 116 Hawai'i 3, 169 P.3d 955 (2007), and State v. Ui, 142 Hawai'i 287, 418 P.3d 628 (2018), which he cites, Jaentsch does not contend that he stipulated to an element of the charged offenses, or even identify anything in his statement to police that established facts comprising an element of the charged offenses. At any rate, because the issue is not properly before us, we will not address it. See HRAP Rule 28(b)(4).

officers allegedly said "he could go home if he told the Detective 'what they need.'"

In claiming ineffective assistance of counsel, the defendant has the burden of establishing:  (1) specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and (2) such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense.  State v. Wakisaka, 102 Hawai'i 504, 513-14, 78 P.3d 317, 326-27 (2003) (quoting State v. Aplaca, 74 Haw. 54, 66-67, 837 P.2d 1298, 1305 (1992)).

Jaentsch has not met this burden.  On this record, he has not shown that failing to contest the Motion or stipulating to the voluntariness of his statements reflected defense counsel's lack of skill, judgment, or diligence.  For example, the Motion includes a declaration of the State's attorney which states, among other things, that on November 1, 2016:

(1)  the Detective read to Jaentsch form HPD-81, "Warning Persons Being Interrogated of Their Constitutional Rights";

(2)  Jaentsch initialed the form, indicating that he:

(a)  understood what the Detective told him,

(b)  did not want an attorney, and

(c)  wanted to tell the Detective what happened; and

(3)  Jaentsch then provided a statement to the Detective, which included "but [was] not limited to":

(a)  "[t]hat he denies pushing, punching, kicking or head butting Complainant"; and

(b)  "Defendant . . . said he knows he would never do those things to his wife."

The record also includes the transcript of the pre-trial hearing on the Motion, which Jaentsch attended with defense counsel.  That transcript reflects the following exchange regarding the Motion:

4

THE COURT: . . . .

As to the State's motion for voluntariness, [defense counsel], is there any issue with regard to the voluntariness of the statement of the defendant?

[DEFENSE COUNSEL]: Your Honor, may I have a second to ask.

THE COURT: Sure.

(Brief pause.)

[DEFENSE COUNSEL]: Your Honor, Mr. Jaentsch, you know, yeah, he does not deny that he made these statements voluntarily. . . .

. . . .

THE COURT: Very good.

So just to be clear, the State's motion to determine voluntariness is granted, and the Court will make that finding that the defendant's statement was voluntarily made. . . .

It thus appears from the transcript of the hearing that defense counsel consulted with Jaentsch before informing the Circuit Court that his statements to the Detective were voluntary.

Nevertheless, Jaentsch argues that his statements were not voluntary and were actually coerced by "promises of favorable treatment" in return for his statements. The only evidence he cites for these purported "extrinsic falsehoods" is his own testimony on cross-examination, when he was confronted with inconsistencies between his trial testimony and his statements to the Detective:

[JAENTSCH]: Well, if you read further in the interview, in the interview, had officers there was telling me to just –– just agree with the detective and you'll go home to your kids.

. . . .

[JAENTSCH]: You know, a lot of things that I said to the detective was to go home. HPD told me there at cellblock, okay, just tell 'em what they need, they're going to send you home.

. . . .

[JAENTSCH]: Yes, I know what I told the detective. And I also was told to tell the detective whatever ––

Notably, Jaentsch does not rely on the transcript of his police interview to support his amorphous allegations of

coercion. It appears that the transcript was used at trial (marked as Exhibit 25 for identification) to cross-examine Jaentsch, and it presumably was made available to defense counsel. But the transcript has not been made part of the record on appeal.

This record does not support the conclusion that defense counsel showed a lack of skill or judgment by failing to contest the Motion and by stipulating to the voluntariness of the statements Jaentsch made to the HPD Detective. Thus, Jaentsch has not met his burden of proving that the alleged error constituted ineffective assistance of counsel.

**B. The Circuit Court Did Not Err in Concluding that Stepson Was Qualified to Testify as a Witness**

Jaentsch argues that the trial court erred in finding that Stepson was competent to testify because Stepson was allegedly unable to define "truth."

Stepson was ten years old at the time of trial. Before his substantive testimony, he was asked a series of questions to determine his competence to testify:

BY [THE STATE]:

> Q: And do you know the difference between a truth and a lie?
>
> A: Yeah.
>
> Q: Okay. What is a truth?
>
> A: Whenever -- whenever you, like, um, tell something that, um, well, I don't know.
>
> Q: Okay. Is a truth a good thing or a bad thing?
>
> A: Good.
>
> Q: Okay. Do you know what a lie is?
>
> A: Yeah.
>
> Q: Okay. Is a lie a good thing or a bad thing?
>
> A: Bad.
>
> Q: Okay. What if I were to tell you that what I'm holding in my hand is a pen, is that a truth or is that a lie?
>
> A: Truth.
>
> Q: Okay. And why is that?

A:    Because you're -- it's actually a pen.

Q:    Okay. And if I told you that we were at the beach right now, would that be a truth or a lie?

A:    Lie.

Q:    Okay. And why, why would that be a lie?

A:    Because we're not actually at the beach.

Q:    Okay. And do you know what a promise is?

A:    Yeah.

Q:    Okay. What is a promise?

A:    Something that, um, you're, like going to actually do or say.

Q:    Okay. And are you willing to take an oath, which is like a special promise to tell the truth?

A:    Yeah.

Q:    And if you take an oath today, which is the special promise to tell the truth, will you tell the truth in this courtroom?

A:    Yeah.

[THE STATE]:  And, Your Honor, at this time the State would ask the witness to be sworn.

THE COURT:  Any *voir dire* objection to qualification?

[DEFENSE COUNSEL]:  No, Your Honor.

THE COURT:  All right.

Stepson was then sworn-in and testified.  It thus appears that the Circuit Court "adjudged [Stepson] to be competent sub silentio."  See State v. Kelekolio, 74 Haw. 479, 528, 849 P.2d 58, 80 (1993).

At the outset, the record makes clear that defense counsel did not preserve for appeal any objection to Stepson's qualification to testify; indeed, as quoted above, defense counsel expressly stated his lack of objection.  Thus, the issue has been waived and is not properly before us.  See Enoka v. AIG Hawaii Ins. Co., 109 Hawai'i 537, 546, 128 P.3d 850, 859 (2006); HRAP Rule 28(b)(4).  Although this court may "at its option" notice plain error in these circumstances, HRAP Rule 28(b)(4), based on our review of the record, we conclude there was none.

Jaentsch argues that Stepson was not competent because he could not define "truth" on the witness stand. But it is hardly surprising that a child – or many adults, for that matter – would find it difficult to verbalize the meaning of "truth," a concept that some of the world's most renowned philosophers have had trouble pinning down. What is plain from the record is that Stepson understood what truth means in practice and could distinguish the truth from a lie; he also knew the value of truth and what a promise was. Above all, Stepson's answers revealed that he understood his duty to tell the truth while testifying. See Haw. R. Evid. Rule 603.1(2) (2016) ("[a] person is disqualified to be a witness if the person is . . . incapable of understanding the duty of a witness to tell the truth"); Kelekolio, 74 Haw. at 524-25, 849 P.2d at 78-79. On this record, we conclude that the Circuit Court did not plainly err in deciding that Stepson was competent to testify.

## C. There Was Substantial Evidence to Support the Conviction

Jaentsch contends there was no substantial evidence to support his conviction, because Stepson's testimony was inadmissible (see supra), and Puha's testimony was "inconsistent and not supported by the physical evidence." We disagree.

Sufficient evidence to support a conviction requires substantial evidence as to every material element of the offense charged. State v. Grace, 107 Hawai'i 133, 139, 111 P.3d 28, 34 (App. 2005) (quoting State v. Ferrer 96 Hawai'i 409, 422, 23 P.3d 744, 757 (App. 2001)). Substantial evidence is "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Id. (quoting Ferrer, 96 Hawai'i at 422, 23 P.3d at 757). The evidence must be "viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact," who must "determine credibility, weigh the evidence, and draw justifiable inferences of fact." Id. (quoting Ferrer, 96 Hawai'i at 422, 23 P.3d at 757).

Here, Jaentsch was convicted of violating HRS § 709-906(1) and (9), which proscribes the intentional, knowing or reckless physical abuse of a family or household member in the presence of a family or household member under 14 years of age. Upon review of the record, we conclude that the State produced sufficient evidence to support Jaentsch's conviction. In particular, Puha's testimony establishes that: (1) Jaentsch physically abused her; (2) he did so in the presence of his 10-year-old Stepson; (3) Puha and Stepson were family or household members of Jaentsch; (4) Jaentsch acted intentionally, knowingly, or recklessly as to each of these elements; and (5) Jaentsch intended or knew that the physical abuse occurred in the presence of Stepson.

Jaentsch contends that Puha's testimony should have been discounted by the jury because she was not credible. He argues that: (1) when Puha testified she gave conflicting and inconsistent accounts; (2) at the preliminary hearing she denied "that any of the alleged acts had occurred"; and (3) her injuries as shown in the photo evidence were not as severe as one would expect from her description of the abuse.

It is within the province of the trier of fact to "determine credibility, weigh the evidence, and draw justifiable inferences of fact." Grace, 107 at 139, 111 P.3d at 34 (quoting Ferrer, 96 Hawai'i at 422, 23 P.3d at 757). Here, the jury listened to Puha's testimony, was aware that she denied the abuse at the preliminary hearing "[b]ecause she wanted to give [Jaentsch] another chance," and was shown photos of her alleged injuries. It was within the jury's purview, when furnished with the relevant evidence, to determine whether Puha was credible and what weight to give her testimony. Jaentsch's argument is therefore without merit.

Moreover, for the reasons previously stated, Stepson's testimony was admissible. His testimony also supported the conviction.

Considering the evidence in the strongest light for the prosecution, and in full recognition of the province of the trier of fact, we conclude there was sufficient evidence to support

Jaentsch's conviction for violating HRS § 709-906(1) and (9).

### III.  CONCLUSION

We affirm the Judgment of Conviction and Sentence and the Mittimus, both filed on October 16, 2018, in the Family Court of the First Circuit.

DATED:  Honolulu, Hawai'i, December 31, 2019.


On the briefs:

Randall K. Hironaka
(Miyoshi & Hironaka)
for Defendant-Appellant.

Brian R. Vincent,
Deputy Prosecting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge

10